STATE OF NORTH CAROLINA v. STEVEN LEE SCHIFFER

No. COA98-196

(Filed 5 January 1999)

**1. Search and Seizure— automobile—tinted windows**

The trial court did not err in a prosecution for drug-related offenses by denying defendant's motion to suppress where a deputy stopped defendant on Interstate 95 after noticing Florida tags and tinting which the deputy believed was darker than permitted under North Carolina law. Unlike the window-tinting restrictions, the windshield-tinting restrictions are not subject to any exception for vehicles registered in other states and it is immaterial whether defendant's windows were tinted in compliance with Florida law or whether the deputy was mistaken or unaware of certain aspects of window-tinting restrictions. The deputy could reasonably suspect that defendant was violating the windshield-tinting restrictions based solely upon his observation of excess tinting on the windshield and was entitled to stop defendant's vehicle for a brief investigation.

STATE v. SCHIFFER

[132 N.C. App. 22 (1999)]

**2. Constitutional Law— Commerce Clause—windshield tinting—vehicle registered outside North Carolina**

Violation of North Carolina's windshield-tinting laws provided a reasonable basis for a traffic stop in a narcotics case; defendant made no Commerce Clause argument with respect to windshield-tinting laws and defendant's Commerce Clause argument concerning window-tinting was not addressed.

**3. Search and Seizure— automobile—consent to search—voluntary**

The evidence in a drug prosecution supported the trial court's finding that consent to search the vehicle was voluntarily given where the deputy testified that defendant initially resisted the request for consent only because he was unsure whether he could consent to the search of a car he had borrowed; the deputy's response to those concerns was accurate in that he told defendant that a person in control and possession of the car could consent; and the smell of marijuana gave the deputy probable cause to justify a warrantless search even without defendant's consent. There is no evidence that the deputy spoke to defendant in an intimidating manner or that he engaged in any other conduct designed to coerce defendant into agreeing to a search.

Appeal by defendant from judgments entered 10 April 1997 by Judge D. Jack Hooks, Jr. in Robeson County Superior Court. Heard in the Court of Appeals 27 October 1998.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Hal F. Askins and Assistant Attorney General William B. Crumpler, for the State.*

*Daniel Shatz and Musselwhite, Musselwhite, Musselwhite & Branch, by David F. Branch, Jr., for defendant.*

LEWIS, Judge.

Defendant pled guilty to several drug-related offenses after his motion to suppress evidence was denied. The only issues raised by his appeal pertain to the denial of his motion to suppress.

The facts found by the trial court in its written denial of defendant's motion are essentially as follows. On 1 February 1996, Deputy J.W. Jacobs of the Robeson County Sheriff's Department, Drug Enforcement Division, was patrolling Interstate 95 from his police

car. He was parked on the median facing southbound traffic. Around 2:45 p.m., he observed a 1986 Pontiac Grand Prix traveling north at fifty-nine miles per hour. The windows and windshield of the car were tinted, and Deputy Jacobs believed the tinting was darker than permitted under North Carolina law. *See* N.C. Gen. Stat. § 20-127(b) (Cum. Supp. 1997) (containing this state's window and windshield tinting restrictions). It is a Class 2 misdemeanor to drive a vehicle on a highway or public vehicular area of this state if the vehicle's windshield or windows are tinted in violation of North Carolina law. G.S. 20-127(d), (d)(2); N.C. Gen. Stat. § 20-176(c) (1993).

When Deputy Jacobs pulled behind the Grand Prix, he noticed it had Florida tags. He pulled alongside the car and looked to see if any window displayed a sticker indicating that the tinting complied with Florida law. Finding no such sticker, he stopped the vehicle.

The windows and windshield of the Grand Prix were, in fact, "considerably darker than [what] is normally allowed" under North Carolina law. Order Filed 1 July 1997 ("Written Order"), Finding of Fact 1, ¶ 3. Because the car was registered in Florida and complied with Florida's tinting laws, however, it was exempt from the window tinting restrictions of G.S. 20-127. *See* G.S. 20-127(c), (c)(10). The car was *not* exempt from the *windshield* tinting requirements of this state, even though its windshield was apparently tinted in compliance with Florida law. G.S. 20-127(c). As Officer Jacobs later discovered, a sticker indicating that the Grand Prix's windows and windshield complied with Florida's tinting laws was affixed to the door jamb inside the car on the driver's side.

At the time of the stop on 1 February 1996, Officer Jacobs was under the good faith but mistaken belief that section 20-127 required vehicles with tinted windows or windshields to display a label in each tinted window or windshield indicating that its tinting complied with North Carolina law. Under the previous statute, such labels were, in fact, required, *see* N.C. Gen. Stat. § 20-127(d) (1993), but effective 1 November 1995, they are not. *See* 1995 N.C. Sess. Laws ch. 473, § 4. In addition, Officer Jacobs was unaware of the recently-enacted subsection (c)(10), which exempts from North Carolina's window tinting restrictions vehicles registered outside this state and in compliance with the tinting laws of the state of registration. Subsection (c)(10) also went into effect on 1 November 1995. *Id.*

Officer Jacobs approached the driver's side door, and defendant, the driver, rolled down his window. The scent of unburned marijuana

wafted from the Grand Prix. Defendant handed Deputy Jacobs his license and registration, which showed that the car was registered in Florida. After a brief conversation, Deputy Jacobs asked defendant for his consent to search the vehicle. Defendant said that because he did not own the Grand Prix, he did not know if he could consent to a search of it. Deputy Jacobs explained that defendant could consent because he was in control of the vehicle. He further explained that he could search the vehicle even without defendant's consent because he smelled marijuana, and that he could obtain a search warrant. Defendant then consented to a search of the vehicle.

When he searched the car's interior, Deputy Jacobs found no contraband but smelled marijuana even more intensely. He asked defendant if there was anything illegal in the trunk, and defendant replied, "I have nothing in the trunk." Upon opening the trunk, Deputy Jacobs "was overwhelmed by the smell of marijuana." He found a blue sheet, covered with a white powdery substance, spread across the trunk. He moved the sheet aside and found a number of brown trash bags sealed with duct tape. He opened one, and inside was a vegetable material he believed to be marijuana. He then seized the items in the trunk.

Defendant was charged with multiple drug offenses. On 30 July 1996, he filed a motion claiming that the stop of his vehicle was unconstitutional and urging the trial court to suppress the evidence seized by Deputy Jacobs. A hearing on the motion was conducted on 9 April 1997. Testimony was received from Deputy Jacobs and from Steve Whalen, the owner of the detail shop in Orlando where the Grand Prix's windows were tinted. At the close of evidence, the superior court judge denied defendant's motion. His ruling and the findings and conclusions on which it was based were first rendered verbally on 9 April 1997. A written version of the judge's ruling was later entered as an order of the superior court on 1 July 1997. The court concluded in its written order that

the lack of the window sticker, the significantly darker tint that [sic] is provided for and significantly darker tint that [sic] is allowed and typical under the law in the State of North Carolina, was sufficient to give and did give Deputy J.W. Jacobs a reasonable suspicion for stopping said motor vehicle to determine whether the motor vehicle laws of the State of North Carolina were being violated by the operator of said 1986 Pontiac Grand Prix automobile.

Pursuant to a plea agreement, defendant then pled guilty to all six charges against him. The charges were consolidated, and defendant was sentenced to thirty-five to forty-two months in prison and fined $25,000.

\* \* \*

[1] The United States Constitution and the North Carolina Constitution prohibit unreasonable seizures of the person. U.S. Const. amends. IV, XIV; N.C. Const. art. I, § 20. These constitutional protections apply to brief investigatory traffic stops like the one conducted by Deputy Jacobs. *Delaware v. Prouse*, 440 U.S. 648, 653-54, 59 L. Ed. 2d 660, 667 (1979); *see State v. Battle*, 109 N.C. App. 367, 371, 427 S.E.2d 156, 159 (1993). As a general rule, a stop made for investigatory purposes is reasonable, and therefore constitutional, when the investigating officer has a reasonable suspicion, supported by articulable facts, that the person seized may have engaged in or may be engaged in criminal activity. *United States v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10 (1989). While the Supreme Court has repeatedly declined to provide a rigid definition for the concept of "reasonable suspicion," *see, e.g., Ornelas v. United States*, 517 U.S. 690, 695, 134 L. Ed. 2d 911, 918 (1996), it has described the term to mean " 'a particularized and objective basis' for suspecting the person stopped of criminal activity." *Id.* at 696, 134 L. Ed. 2d at 918 (quoting *United States v. Cortez*, 449 U.S. 411, 417-18, 66 L. Ed. 2d 621, 629 (1981)). The level of suspicion required for an investigatory stop, *see supra*, is lower than what is required for a seizure based on probable cause, which is a suspicion produced by such facts as indicate a fair probability that the person seized has engaged in or is engaged in criminal activity. *Sokolow*, 490 U.S. at 7-8, 104 L. Ed. 2d at 10-11; *Beck v. Ohio*, 379 U.S. 89, 91, 13 L. Ed. 2d 142, 145 (1964).

As noted above, the law that Deputy Jacobs initially suspected defendant of having violated pertains to the tinting of motor vehicle windows and windshields.

(b) Window Tinting Restrictions.—A window of a vehicle that is operated on a highway or a public vehicular area must comply with this subsection. *The windshield of the vehicle may be tinted only along the top of the windshield and the tinting may not extend more than five inches below the top of the windshield or below the AS1 line of the windshield, whichever measurement is longer.* Any other window of the vehicle may be tinted in accordance with the following restrictions:

**STATE v. SCHIFFER**

[132 N.C. App. 22 (1999)]

(1). The total light transmission of the tinted window must be at least thirty-five percent (35%). A vehicle window that, by use of a light meter approved by the Commissioner [of Motor Vehicles], measures a total light transmission of more than thirty-two percent (32%) is conclusively presumed to meet this restriction.

G.S. 20-127 (emphasis added). The term "AS1 line" apparently refers to the bottom edge of tinting across the top of a windshield, where the tinting is applied by the vehicle's manufacturer. *See* 49 C.F.R. § 571.205, S5.1.1 (1997); American National Standard "Safety Code for Glazing Materials for Glazing Motor Vehicles Operating on Land Highways," ANSI Z26.1-1977, as supplemented by Z26.1a, July 3, 1980, §§ 5 and 6.

The window-tinting restrictions of G.S. 20-127 are subject to a number of exceptions, one of which, as noted above, is applicable to defendant's argument:

(c) Tinting Exceptions.—*The window tinting restrictions of subsection (b) of this section apply without exception to the windshield of a vehicle.* The window tinting restrictions in subdivisions (b)(1) and (b)(2) of this section do not apply to any of the following vehicle windows:

. . . .

(10) A window of a vehicle that is registered in another state and meets the requirements of the state in which it is registered.

*Id.* (emphasis added).

Defendant first challenges the superior court judge's finding that his car possessed a "significantly darker tint" than what is "allowed and typical" under North Carolina law. Written Order, Finding of Fact 12. Based on the evidence presented at the hearing, we read this finding of fact—which does not contain either the word "window" or the word "windshield"—to refer *both* to the windows and to the windshield of the Grand Prix. Insofar as it refers to the windshield of the Grand Prix, it is indubitably supported by competent evidence. Deputy Jacobs testified that the "factory tinting" on most vehicles extends down five to six inches from the top of the windshield; this testimony indicates that the "AS1 line" generally is located no more than five or six inches from the top of a windshield. He further testified that before he stopped the Grand Prix, he observed that the windshield tinting extended about ten inches from the top of the wind-

shield. Thus, the windshield was tinted four to five inches in excess of what is permitted under G.S. 20-127(b). This band of excess tinting was indeed "significantly darker" than what is "allowed and typical" under North Carolina law: *no tinting whatsoever* is allowed in this area of the windshield. The trial court's finding to this effect is supported by competent evidence, and it must stand. *See State v. Robinson,* 346 N.C. 586, 596, 488 S.E.2d 174, 181 (1997).

Defendant argues that because his car was registered in Florida, a fact indicated by his Florida license plates, and because his car's windows were in compliance with Florida law, Deputy Jacobs could have no reasonable suspicion that he was violating the North Carolina motor vehicle tinting statute. *See* G.S. 20-127(c)(10). Further, defendant argues that because the stop was based in part on Deputy Jacobs' misconception that North Carolina law required a "compliance sticker" on every tinted window or windshield, the stop was not based on a reasonable suspicion that defendant was violating the law.

Unlike the window-tinting restrictions of section 20-127, the windshield-tinting restrictions are not subject to any exception for vehicles registered in other states. It is immaterial whether defendant's windows were tinted in compliance with Florida law, or whether Deputy Jacobs was mistaken about or unaware of certain aspects of the window-tinting restrictions. Based solely upon his observation of the excess tinting on the Grand Prix's *windshield*, Deputy Jacobs could reasonably suspect that defendant was violating the windshield-tinting restrictions of section 20-127. In fact, the excessively tinted windshield was one of the reasons Deputy Jacobs stopped defendant's car.

> [DEFENSE COUNSEL:] Let me ask you this. Had you decided you were going to stop the vehicle when you followed it and saw the tinted windows at the back, and then the tinted window on the driver's side . . . ?
>
> [DEPUTY JACOBS:] I didn't initially make up my mind until I had actually, when I actually went by the vehicle and saw the tint all the way around, the tint on the windshield, the tint on the side, the tint on the back, and that, along with the traffic that was behind me, because I knew, at that point, I couldn't get back in behind him.
>
> So in answer to your question, as I perceive it to be, it would be, actually when I—*when I saw the tint on the windshield,*

along with the other tint, *is when, yes, I said, I am going to stop this vehicle.*

Transcript of Hearing on Motion to Suppress, p. 35 (emphasis added). Deputy Jacobs was entitled to stop defendant's vehicle for a brief investigation.

[2] Defendant's next argument appears to be this: It violates the Commerce Clause of the United States Constitution to conduct an investigatory traffic stop for the purpose of determining whether a vehicle registered outside North Carolina complies with the window-tinting laws of the state of registration.

Deputy Jacobs had a reasonable suspicion to stop defendant's car on the basis that defendant was violating North Carolina's *windshield*-tinting laws. Because this provided an adequate basis for his investigatory stop, we need not address the Commerce Clause argument raised by defendant with respect to this state's *window*-tinting laws. As stated above repeatedly, section 20-127 distinguishes between the window and windshield of a vehicle. Defendant makes no Commerce Clause argument with respect to North Carolina's windshield-tinting laws. Indeed, the word "windshield" appears nowhere in defendant's brief.

[3] Finally, defendant argues that the evidence was insufficient to support the trial court's finding that defendant voluntarily consented to a search of his vehicle. He argues that his alleged consent was nothing more than an acquiescence to Deputy Jacobs's show of authority and, as such, was not voluntary.

Whether consent to a search is obtained voluntarily or by coercion "is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 36 L. Ed. 2d 854, 863 (1973). The mere fact that a person is in custody does not mean he cannot voluntarily consent to a search. *State v. Powell*, 297 N.C. 419, 426, 255 S.E.2d 154, 158 (1979).

The evidence supports the trial court's finding that consent was given voluntarily. Deputy Jacobs testified that defendant initially resisted his request for consent only because he was unsure whether he *could* consent to the search of a car he had borrowed from someone. Deputy Jacobs' response to defendant's concerns was entirely accurate: He told defendant that, as the person in control and possession of the car, he could consent to a search of it. *See State v.*

*McDaniels,* 103 N.C. App. 175, 187, 405 S.E.2d 358, 365-66 (1991), *aff'd per curiam,* 331 N.C. 112, 413 S.E.2d 799 (1992). Moreover, the smell of marijuana gave Deputy Jacobs probable cause sufficient to justify a warrantless search of the car even without defendant's consent. *See State v. Isleib,* 319 N.C. 634, 638-40, 356 S.E.2d 573, 576-77 (1987). On the basis of this probable cause, it was also accurate for Deputy Jacobs to tell defendant he could obtain a warrant to search the car. *See* N.C. Gen. Stat. § 15A-245(b) (1997).

The statements Deputy Jacobs made to defendant just before defendant consented to the search were entirely accurate. There is no evidence that Deputy Jacobs spoke to defendant in an intimidating manner, or that he engaged in any other conduct designed to coerce defendant into agreeing to a search. We hold that the trial court accurately concluded that defendant voluntarily consented to a search of the Grand Prix. Defendant's motion to suppress the evidence seized was correctly denied.

No error.

Judges GREENE and HORTON concur.