IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA20-248

Filed: 20 October 2020

Iredell County, No. 14 CRS 55844

STATE OF NORTH CAROLINA

v.

TEVIN O'BRIAN DALTON

Appeal by defendant from judgment entered 15 November 2019 by Judge Julia Lynn Gullett in Iredell County Superior Court. Heard in the Court of Appeals 22 September 2020.

*Joshua H. Stein Attorney General, by Assistant Attorney General Nicholas W. Yates, for the State.*

*BJK Legal, by Benjamin J. Kull, for defendant.*

ARROWOOD, Judge.

Tevin O'Brian Dalton ("defendant") appeals from the trial court's denial of his motion to suppress certain evidence before trial and the calculation and imposition of his sentence after trial. For the following reasons, we find no error in the trial court's denial of defendant's motion to suppress; however, we remand this matter to the Iredell County Superior Court for resentencing.

I.     Background

Around ten o'clock in the evening of 11 November 2014, Statesville Police Officer Ben Hardy ("Officer Hardy") observed a white Mercedes traveling with a

"large glow coming from inside the vehicle." Officer Hardy proceeded to follow the vehicle at which point he noticed a "more prevalent" glow emitting from the vehicle. Upon following the vehicle to a stop sign, Officer Hardy discovered that the glow was being produced by a cellular device held by the driver and sole occupant of the car. Officer Hardy testified that at this point he could "see the phone was up in the air, almost like in the center." It appeared that the driver was texting on the phone. Officer Hardy immediately relayed tag information to communications and initiated a stop of the vehicle based on the suspicion that the driver, which later turned out to be defendant, was texting while driving.

Upon approaching the vehicle, Officer Hardy notified the driver that he had been stopped for texting while driving. The driver "kind of laughed at that notion" and claimed that he was using the phone's "maps" application as he had "somewhere to get to." The Officer asked to see the driver's phone to confirm. Defendant voluntarily retrieved his phone and "immediately as soon as he turned his phone on, it was [on] a texting screen."

Officer Hardy then asked for the driver's license and registration. The driver did not provide either but identified himself as "Tevin Dalton." Officer Hardy returned to his vehicle to confirm the provided information in a law enforcement database called "CJLEADS," which displays pictures of persons entered into the

system. Officer Hardy, thus, could have confirmed at this time that the individual driving the vehicle was in fact defendant.

However, before Officer Hardy had the opportunity to enter the foregoing information into CJLEADS, defendant drove off at a high rate of speed. Officer Hardy pursued the vehicle, which was traveling "well in excess of ninety [miles-per-hour]" in a thirty-five mile-per-hour zone. Due to its high speed and dangerous maneuvering, Officer Hardy lost sight of the vehicle shortly thereafter as defendant turned onto Interstate 77. For safety reasons, Officer Hardy was ordered to stop the pursuit. Officer Hardy complied and issued a "Be on the Look Out" or "BOLO" to the North Carolina Highway Patrol and other law enforcement agencies. Shortly afterward, Officer Hardy was notified that highway patrol had located the vehicle and "got in a chase with it also on the interstate." However, similar to Officer Hardy's chase, the highway patrol officer "lost sight of the vehicle and cancelled the[] pursuit because of safety reasons[.]"

When Officer Hardy returned to the station, he entered the name and date of birth supplied by the driver during the initial stop into CJLEADS. Defendant's profile appeared with his picture thus confirming that the driver of the Mercedes was in fact defendant. CJLEADS also indicated that defendant's driver's license had been revoked in North Carolina. At this juncture, as he had ascertained the identity of the driver of the subject vehicle, Officer Hardy went to the magistrate's office and swore

out warrants on defendant for felonious fleeing to elude arrest and texting while driving.

Before trial, defendant filed a motion to suppress evidence obtained during the traffic stop, particularly the evidence identifying defendant as the driver of the vehicle. The trial court denied the motion during a pretrial hearing, finding that the "officer had reasonable suspicion to stop the vehicle to investigate further." At trial, in November 2019, neither defendant nor his counsel objected to Officer Hardy's testimony regarding evidence obtained during the traffic stop (*i.e.*, the information gathered from defendant that allowed Officer Hardy to identify defendant as the driver of the vehicle).

On 15 November 2019, the jury found defendant guilty of felonious fleeing to elude but not guilty to the charge of texting while driving. The State and counsel for defendant stipulated to six sentencing points (thus level III) for felony sentencing purposes. The trial court sentenced defendant to a minimum of ten and a maximum of twenty-one months' imprisonment. Defendant gave oral notice of appeal the same day.

## II.     Discussion

Defendant contends that the trial court committed plain error by denying his motion to suppress evidence obtained by Officer Hardy during the traffic stop, specifically the information conveyed by defendant identifying him as the driver of

the Mercedes. Defendant also avers that the trial court erred by sentencing him based on a miscalculation of his prior record level under the guidelines. We address each issue in turn.

### A.     Motion to Suppress

At the outset, we note that neither defendant nor his trial counsel objected to Officer Hardy's testimony concerning the evidence defendant sought to suppress before trial. The trial court's "evidentiary ruling on a pretrial motion is *not* sufficient to preserve the issue of admissibility for appeal unless a defendant renews the objection during trial." *State v. Oglesby*, 361 N.C. 550, 554, 648 S.E.2d 819, 821 (2007) (emphasis in original) (citations omitted). By failing to renew his objection at trial, defendant waived review of this issue. *See, e.g.*, *State v. Adams*, 250 N.C. App. 664, 669, 794 S.E.2d 357, 361 (2016). However, "[t]o prevent manifest injustice to a party, or to expedite decision in the public interest," the Court may "suspend or vary the requirements or provisions of any of the[] [appellate] rules in a case pending before it upon application of a party or upon its own initiative[.]" N.C.R. App. P. 2 (2020). In our discretion, we elect to reach the merits of defendant's appeal.

When reviewing a motion to suppress, the trial court's findings of fact are "conclusive and binding on appeal if supported by competent evidence." *State v. Edwards*, 185 N.C. App. 701, 702, 649 S.E.2d 646, 648 (2007). This Court reviews the trial court's conclusions of law *de novo*. *Id.* (citation omitted). But, as noted

above, because defendant failed to object at trial, our standard of review of the admission of the challenged evidence is for plain error. *Adams*, 250 N.C. App. at 669, 794 S.E.2d at 361. "For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error 'had a probable impact on the jury's finding that the defendant was guilty.' " *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (internal citation omitted) (quoting *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)). "[Plain] error will often be one that 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings[.]' " *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334 (quoting *Odom*, 307 N.C. at 660, 300 S.E.2d at 378)).

In the case before us, defendant contends that the trial court committed plain error by concluding that Officer Hardy was justified in stopping the Mercedes solely based on his observation that the "operator was using a cell phone while driving." Defendant points out that merely "using a cell phone" is not criminal activity *per se*, and, therefore, the trial court erroneously concluded that the stop was justified based on a reasonable suspicion that "*non-criminal* activity was afoot." Alternatively, defendant argues that even if this Court finds that the trial court applied the correct legal standard, the lower court's conclusions of law were not supported by its findings of fact.

"Both the United States and North Carolina Constitutions protect against unreasonable searches and seizures." *State v. Otto*, 366 N.C. 134, 136, 726 S.E.2d 824, 827 (2012) (citing U.S. Const. amend. IV; N.C. Const. art. I, § 20). Traffic stops, such as the one at issue here, are historically reviewed under the framework espoused in *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889 (1968). *State v. Styles*, 362 N.C. 412, 414, 665 S.E.2d 438, 439 (2008) (citation omitted). Under *Terry* and its progeny, a "traffic stop is permitted if the officer has a 'reasonable, articulable suspicion that criminal activity is afoot.'" *Styles*, 362 N.C. at 414, 665 S.E.2d at 439 (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123, 145 L. Ed. 2d 570, 576 (2000)). "The only requirement is a minimal level of objective justification, something more than an 'unparticularized suspicion or hunch.'" *State v. Watkins*, 337 N.C. 437, 442, 446 S.E.2d 67, 70 (1994) (quoting *United States v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10 (1989)). "To meet the reasonable suspicion standard, it is enough for the officer to *reasonably believe* that a driver has violated the law." *State v. Johnson*, 370 N.C. 32, 38, 803 S.E.2d 137, 141 (2017) (emphasis in original) (citations omitted).

North Carolina, like other states, has statutorily proscribed certain uses of mobile telephones while operating a motor vehicle. The relevant provision in this State reads, in pertinent portion, the following:

> (a) Offense.--It shall be unlawful for any person to operate a vehicle on a public street or highway or public vehicular area while using a mobile telephone to:

> (1) Manually enter multiple letters or text in the device as a means of communicating with another person; or
>
> (2) Read any electronic mail or text message transmitted to the device or stored within the device, provided that this prohibition shall not apply to any name or number stored in the device nor to any caller identification information.

N.C. Gen. Stat. § 20-137.4A(a)(1)-(2) (2019). However, the General Assembly has carved out various exceptions to these proscriptions:

> (b) Exceptions.--The provisions of this section shall not apply to:
>
> (1) The operator of a vehicle that is lawfully parked or stopped.
>
> (2) Any of the following while in the performance of their official duties: a law enforcement officer; a member of a fire department; or the operator of a public or private ambulance.
>
> (3) The use of factory-installed or aftermarket global positioning systems (GPS) or wireless communications devices used to transmit or receive data as part of a digital dispatch system.
>
> (4) The use of voice operated technology.

N.C. Gen. Stat. § 20-137.4A(b)(1)-(4).

In this action, at the conclusion of the pre-trial suppression hearing, the trial judge made the following findings of fact:

> In this matter the Court makes the following findings of fact:

That on November 11th, 2014 Officer Ben Hardy of the Statesville Police Department was patrolling within the city limits of Statesville.

That he observed a vehicle cross over Broad Street from Green Street.

That Officer Hardy observed what he thought was a glow inside the vehicle.

That Officer Hardy turned onto the--onto Green Street. At that point, the vehicle in question was in front of him. At that point, Officer Hardy observed what appeared to be a cell phone screen through the back window of the vehicle, whereupon the vehicle stopped at a stop sign. That at that point, what appeared to be a cell phone screen was clear in the air toward the center of the car.

That it appeared to the officer that there was only one occupant of the vehicle.

And the officer believed that the operator was using a cell phone while driving.

The Court observed the dash cam vehicle. And the Court observed in the video what the officer described.

The Court therefore finds that the officer had reasonable suspicion to stop the vehicle to investigate further.

These findings and conclusions were supported, in large part, by the testimony of

Officer Hardy. Based on his observations and experience, Officer Hardy testified that

he did not stop defendant for merely using a cell phone; the car was stopped for

actively using a mobile device while operating a motor vehicle in a manner that

Officer Hardy reasonably believed was proscribed by N.C. Gen. Stat. § 20-137.4A. Officer Hardy observed defendant using and handling a cellular device while traveling on multiple streets in a manner consistent with texting or reading text messages—which is unlawful per N.C. Gen. Stat. § 20-137.4A(a)(1)-(2). Officer Hardy opined that, based on his experience, had defendant been using a "mapping system" on the device as he claimed, "it would be a look, and then [placing the phone] down as opposed to holding it up the entire street just to get to a stop sign, and then to make a left turn onto a street."

Defendant argues that as a foundation for reasonable suspicion, Officer Hardy was required to clearly see text messaging on defendant's cell phone or watch him type out a text message. However, requiring a law enforcement officer to confirm the specific use of the mobile device as a precondition to making an investigatory stop would be essentially requiring proof beyond a reasonable doubt. While reasonable suspicion is more than a mere hunch, it is surely a much less demanding standard than proof beyond a reasonable doubt. *See State v. Schiffer*, 132 N.C. App. 22, 27, 510 S.E.2d 165, 168 (1999) (finding that officer had reasonable suspicion to stop vehicle after noticing out-of-state tags and window tinting which the officer believed was darker than permitted under North Carolina law); *State v. Kincaid*, 147 N.C. App. 94, 98, 555 S.E.2d 294, 298 (2001) (holding that officer had reasonable suspicion to stop vehicle for revoked license based on his personal knowledge of defendant);

*State v. Young*, 148 N.C. App. 462, 471, 559 S.E.2d 814, 821 (2002) (Greene, J. concurring) (recognizing that a "traffic stop based on an officer's mere suspicion that a traffic violation is being committed, but which can only be verified by stopping the vehicle, such as drunk driving or driving with a revoked license, is classified as an investigatory stop, also known as a *Terry* stop.") (citations omitted).

In sum, just because a person may be using a wireless telephone while operating a motor vehicle for a valid purpose does not, *ipso facto*, negate the reasonable suspicion that the person is using the device for a prohibited use. When reviewing N.C. Gen. Stat. § 20-137.4A(a) ("Unlawful use of mobile telephone for text messaging or electronic mail"), it is as probable that a driver using a cell phone is doing so to send or receive prohibited text messages as it is that the device is being used for one of many lawful purposes, perhaps more so. Indeed, it would be unlikely that someone, such as Officer Hardy, observing a person using a mobile device from afar, such as defendant, would be able to definitively determine the specific use of the device in hand. In any event, under the facts of this case, the trial court properly found that Officer Hardy had reasonable, articulable suspicion that defendant had violated the law such that the traffic stop was warranted.

We, therefore, hold that the trial court did not err, much less commit plain error, in denying defendant's motion to suppress. More specifically, we hold that the trial court's findings of fact, under the totality of the circumstances, support the

conclusion that Officer Hardy had a reasonable, articulable suspicion to believe that criminal activity was afoot (*i.e.*, that defendant was using a cell phone in a manner proscribed by law). Having determined that the motion to suppress was properly denied, we do not address whether the alleged error had a probable impact on the jury's determination that defendant was guilty. We are cognizant that our holding may appear to create a rather perverse result: that is, either every driver using a cellular phone may be reasonably suspected of using the phone in an unlawful manner or no driver may be reasonably suspected of using a cellular phone in an unlawful manner. However, our holding is strictly limited to the facts of this case, which, as explained *supra*, indicate that there was additional indicia of criminal activity to justify the stop in addition to Officer Hardy's plain observation of defendant's use of a mobile device. Such determinations are fact specific and rely upon the evidence adduced at any trial on such a question. Our holding here should not be viewed as establishing a test sufficient to meet the reasonable suspicion test in other "texting-while-driving" cases.

## B. <u>Sentencing</u>

On 15 November 2019, following trial, the sentencing phase proceeded in this matter. Defendant stipulated to having six prior record level points and to being sentenced at prior record level three for felony sentencing purposes. Pursuant to these stipulations, the trial court sentenced defendant within the presumptive range

for the conviction of felonious fleeing to elude: ten to twenty-one months' imprisonment.

On appeal, defendant contends—and the State concedes—that defendant's prior record level worksheet should have reflected only five prior record level points, which, in that case, would have triggered sentencing under level two of the guidelines. The State, however, argues that because defendant was on probation for felonious identity theft when he committed the crime of felonious fleeing to elude, for which he was convicted in this underlying case, defendant obtained an additional sentencing point for being on probation during the commission of a felony. In other words, notwithstanding the fact that the stipulated prior record level worksheet included an extra misdemeanor point, the State contends that an additional sixth point was warranted because the underlying felony was committed while defendant was on probation in another case.

Pursuant to N.C. Gen. Stat. § 15A-1340.14(b)(7), one point is added to a defendant's aggregate prior record level "[i]f the offense was committed while the offender was on supervised or unsupervised probation[.]" N.C. Gen. Stat. § 15A-1340.14(b)(7) (2019). However, the "State must provide a defendant with written notice of its intent to prove the existence of the prior record point . . . as required by G.S. 15A-1340.16(a6)." N.C. Gen. Stat. § 15A-1340.14(b). Subsection 15A-1340.16(a6), in turn, requires that such notice be provided "at least 30 days before

trial or the entry of a guilty or no contest plea." N.C. Gen. Stat. § 15A-1340.16(a6) (2019).

In this case, the trial court never determined whether the statutory requirements of N.C. Gen. Stat. § 15A-1340.16(a6) were met, and the State never provided notice of its intent to prove a prior record level point under N.C. Gen. Stat. § 15A-1340.14(b). *See* N.C. Gen. Stat. § 15A-1022.1(a) (2019) ("The court shall . . . determine whether the State has provided the notice to the defendant required by G.S. 15A-1340.16(a6) or whether the defendant has waived his or her right to such notice."). Nor does the State posit that defendant waived his right to receive such notice. *See id.*; *see also* N.C. Gen. Stat. § 15A-1340.16(a6) ("A defendant may waive the right to receive such notice."). Accordingly, the trial court erred by including the extra (sixth) point in sentencing defendant as a level three.[1] *State v. Snelling*, 231 N.C. App. 676, 682, 752 S.E.2d 739, 744 (2014) (remanding for resentencing under analogous circumstances). This error was prejudicial as it raised defendant's prior record level from a two to a three. *See id.* We therefore remand this matter to the trial court for resentencing defendant at prior record level two under the felony sentencing guidelines.

## III. Conclusion

---

[1] We note that defendant "is not bound by a stipulation as to any conclusion of law that is required to be made for the purpose of calculating" his prior record level. *State v. Gardner*, 225 N.C. App. 161, 167, 736 S.E.2d 826, 830 (2013) (citations omitted). The "trial court's assignment of defendant's prior record level is a question of law." *Id.* at 225 N.C. App. at 167, 736 S.E.2d at 830-31 (citations omitted).

Because we have determined that the trial court did not commit plain error by denying defendant's motion to suppress, we affirm the trial court's ruling on suppression. However, the matter is remanded to the lower court for resentencing for the reasons discussed herein.

NO ERROR; REMANDED FOR RESENTENCING.

Chief Judge MCGEE and Judge ZACHARY concur.