IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA20-248

 Filed: 20 October 2020

Iredell County, No. 14 CRS 55844

STATE OF NORTH CAROLINA

 v.

TEVIN O’BRIAN DALTON

 Appeal by defendant from judgment entered 15 November 2019 by Judge Julia

Lynn Gullett in Iredell County Superior Court. Heard in the Court of Appeals

22 September 2020.

 Joshua H. Stein Attorney General, by Assistant Attorney General Nicholas W.
 Yates, for the State.

 BJK Legal, by Benjamin J. Kull, for defendant.

 ARROWOOD, Judge.

 Tevin O’Brian Dalton (“defendant”) appeals from the trial court’s denial of his

motion to suppress certain evidence before trial and the calculation and imposition of

his sentence after trial. For the following reasons, we find no error in the trial court’s

denial of defendant’s motion to suppress; however, we remand this matter to the

Iredell County Superior Court for resentencing.

 I. Background

 Around ten o’clock in the evening of 11 November 2014, Statesville Police

Officer Ben Hardy (“Officer Hardy”) observed a white Mercedes traveling with a
 STATE V. DALTON

 Opinion of the Court

“large glow coming from inside the vehicle.” Officer Hardy proceeded to follow the

vehicle at which point he noticed a “more prevalent” glow emitting from the vehicle.

Upon following the vehicle to a stop sign, Officer Hardy discovered that the glow was

being produced by a cellular device held by the driver and sole occupant of the car.

Officer Hardy testified that at this point he could “see the phone was up in the air,

almost like in the center.” It appeared that the driver was texting on the phone.

Officer Hardy immediately relayed tag information to communications and initiated

a stop of the vehicle based on the suspicion that the driver, which later turned out to

be defendant, was texting while driving.

 Upon approaching the vehicle, Officer Hardy notified the driver that he had

been stopped for texting while driving. The driver “kind of laughed at that notion”

and claimed that he was using the phone’s “maps” application as he had “somewhere

to get to.” The Officer asked to see the driver’s phone to confirm. Defendant

voluntarily retrieved his phone and “immediately as soon as he turned his phone on,

it was [on] a texting screen.”

 Officer Hardy then asked for the driver’s license and registration. The driver

did not provide either but identified himself as “Tevin Dalton.” Officer Hardy

returned to his vehicle to confirm the provided information in a law enforcement

database called “CJLEADS,” which displays pictures of persons entered into the

 -2-
 STATE V. DALTON

 Opinion of the Court

system. Officer Hardy, thus, could have confirmed at this time that the individual

driving the vehicle was in fact defendant.

 However, before Officer Hardy had the opportunity to enter the foregoing

information into CJLEADS, defendant drove off at a high rate of speed. Officer Hardy

pursued the vehicle, which was traveling “well in excess of ninety [miles-per-hour]”

in a thirty-five mile-per-hour zone. Due to its high speed and dangerous

maneuvering, Officer Hardy lost sight of the vehicle shortly thereafter as defendant

turned onto Interstate 77. For safety reasons, Officer Hardy was ordered to stop the

pursuit. Officer Hardy complied and issued a “Be on the Look Out” or “BOLO” to the

North Carolina Highway Patrol and other law enforcement agencies. Shortly

afterward, Officer Hardy was notified that highway patrol had located the vehicle

and “got in a chase with it also on the interstate.” However, similar to Officer Hardy’s

chase, the highway patrol officer “lost sight of the vehicle and cancelled the[] pursuit

because of safety reasons[.]”

 When Officer Hardy returned to the station, he entered the name and date of

birth supplied by the driver during the initial stop into CJLEADS. Defendant’s

profile appeared with his picture thus confirming that the driver of the Mercedes was

in fact defendant. CJLEADS also indicated that defendant’s driver’s license had been

revoked in North Carolina. At this juncture, as he had ascertained the identity of the

driver of the subject vehicle, Officer Hardy went to the magistrate’s office and swore

 -3-
 STATE V. DALTON

 Opinion of the Court

out warrants on defendant for felonious fleeing to elude arrest and texting while

driving.

 Before trial, defendant filed a motion to suppress evidence obtained during the

traffic stop, particularly the evidence identifying defendant as the driver of the

vehicle. The trial court denied the motion during a pretrial hearing, finding that the

“officer had reasonable suspicion to stop the vehicle to investigate further.” At trial,

in November 2019, neither defendant nor his counsel objected to Officer Hardy’s

testimony regarding evidence obtained during the traffic stop (i.e., the information

gathered from defendant that allowed Officer Hardy to identify defendant as the

driver of the vehicle).

 On 15 November 2019, the jury found defendant guilty of felonious fleeing to

elude but not guilty to the charge of texting while driving. The State and counsel for

defendant stipulated to six sentencing points (thus level III) for felony sentencing

purposes. The trial court sentenced defendant to a minimum of ten and a maximum

of twenty-one months’ imprisonment. Defendant gave oral notice of appeal the same

day.

 II. Discussion

 Defendant contends that the trial court committed plain error by denying his

motion to suppress evidence obtained by Officer Hardy during the traffic stop,

specifically the information conveyed by defendant identifying him as the driver of

 -4-
 STATE V. DALTON

 Opinion of the Court

the Mercedes. Defendant also avers that the trial court erred by sentencing him

based on a miscalculation of his prior record level under the guidelines. We address

each issue in turn.

 A. Motion to Suppress

 At the outset, we note that neither defendant nor his trial counsel objected to

Officer Hardy’s testimony concerning the evidence defendant sought to suppress

before trial. The trial court’s “evidentiary ruling on a pretrial motion is not sufficient

to preserve the issue of admissibility for appeal unless a defendant renews the

objection during trial.” State v. Oglesby, 361 N.C. 550, 554, 648 S.E.2d 819, 821 (2007)

(emphasis in original) (citations omitted). By failing to renew his objection at trial,

defendant waived review of this issue. See, e.g., State v. Adams, 250 N.C. App. 664,

669, 794 S.E.2d 357, 361 (2016). However, “[t]o prevent manifest injustice to a party,

or to expedite decision in the public interest,” the Court may “suspend or vary the

requirements or provisions of any of the[] [appellate] rules in a case pending before it

upon application of a party or upon its own initiative[.]” N.C.R. App. P. 2 (2020). In

our discretion, we elect to reach the merits of defendant’s appeal.

 When reviewing a motion to suppress, the trial court’s findings of fact are

“conclusive and binding on appeal if supported by competent evidence.” State v.

Edwards, 185 N.C. App. 701, 702, 649 S.E.2d 646, 648 (2007). This Court reviews

the trial court’s conclusions of law de novo. Id. (citation omitted). But, as noted

 -5-
 STATE V. DALTON

 Opinion of the Court

above, because defendant failed to object at trial, our standard of review of the

admission of the challenged evidence is for plain error. Adams, 250 N.C. App. at 669,

794 S.E.2d at 361. “For error to constitute plain error, a defendant must demonstrate

that a fundamental error occurred at trial. To show that an error was fundamental,

a defendant must establish prejudice—that, after examination of the entire record,

the error ‘had a probable impact on the jury’s finding that the defendant was guilty.’ ”

State v. Lawrence, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (internal citation

omitted) (quoting State v. Odom, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)).

“[Plain] error will often be one that ‘seriously affect[s] the fairness, integrity or public

reputation of judicial proceedings[.]’ ” Lawrence, 365 N.C. at 518, 723 S.E.2d at 334

(quoting Odom, 307 N.C. at 660, 300 S.E.2d at 378)).

 In the case before us, defendant contends that the trial court committed plain

error by concluding that Officer Hardy was justified in stopping the Mercedes solely

based on his observation that the “operator was using a cell phone while driving.”

Defendant points out that merely “using a cell phone” is not criminal activity per se,

and, therefore, the trial court erroneously concluded that the stop was justified based

on a reasonable suspicion that “non-criminal activity was afoot.” Alternatively,

defendant argues that even if this Court finds that the trial court applied the correct

legal standard, the lower court’s conclusions of law were not supported by its findings

of fact.

 -6-
 STATE V. DALTON

 Opinion of the Court

 “Both the United States and North Carolina Constitutions protect against

unreasonable searches and seizures.” State v. Otto, 366 N.C. 134, 136, 726 S.E.2d

824, 827 (2012) (citing U.S. Const. amend. IV; N.C. Const. art. I, § 20). Traffic stops,

such as the one at issue here, are historically reviewed under the framework espoused

in Terry v. Ohio, 392 U.S. 1, 20 L. Ed. 2d 889 (1968). State v. Styles, 362 N.C. 412,

414, 665 S.E.2d 438, 439 (2008) (citation omitted). Under Terry and its progeny, a

“traffic stop is permitted if the officer has a ‘reasonable, articulable suspicion that

criminal activity is afoot.’ ” Styles, 362 N.C. at 414, 665 S.E.2d at 439 (quoting Illinois

v. Wardlow, 528 U.S. 119, 123, 145 L. Ed. 2d 570, 576 (2000)). “The only requirement

is a minimal level of objective justification, something more than an ‘unparticularized

suspicion or hunch.’ ” State v. Watkins, 337 N.C. 437, 442, 446 S.E.2d 67, 70 (1994)

(quoting United States v. Sokolow, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10 (1989)). “To meet

the reasonable suspicion standard, it is enough for the officer to reasonably believe

that a driver has violated the law.” State v. Johnson, 370 N.C. 32, 38, 803 S.E.2d 137,

141 (2017) (emphasis in original) (citations omitted).

 North Carolina, like other states, has statutorily proscribed certain uses of

mobile telephones while operating a motor vehicle. The relevant provision in this

State reads, in pertinent portion, the following:

 (a) Offense.--It shall be unlawful for any person to operate
 a vehicle on a public street or highway or public
 vehicular area while using a mobile telephone to:

 -7-
 STATE V. DALTON

 Opinion of the Court

 (1) Manually enter multiple letters or text in the device
 as a means of communicating with another person;
 or

 (2) Read any electronic mail or text message
 transmitted to the device or stored within the device,
 provided that this prohibition shall not apply to any
 name or number stored in the device nor to any
 caller identification information.

N.C. Gen. Stat. § 20-137.4A(a)(1)-(2) (2019). However, the General Assembly has

carved out various exceptions to these proscriptions:

 (b) Exceptions.--The provisions of this section shall not
 apply to:

 (1) The operator of a vehicle that is lawfully parked or
 stopped.

 (2) Any of the following while in the performance of
 their official duties: a law enforcement officer; a
 member of a fire department; or the operator of a
 public or private ambulance.

 (3) The use of factory-installed or aftermarket global
 positioning systems (GPS) or wireless
 communications devices used to transmit or receive
 data as part of a digital dispatch system.

 (4) The use of voice operated technology.

N.C. Gen. Stat. § 20-137.4A(b)(1)-(4).

 In this action, at the conclusion of the pre-trial suppression hearing, the trial

judge made the following findings of fact:

 In this matter the Court makes the following
 findings of fact:

 -8-
 STATE V. DALTON

 Opinion of the Court

 That on November 11th, 2014 Officer Ben Hardy of
 the Statesville Police Department was patrolling within
 the city limits of Statesville.

 That he observed a vehicle cross over Broad Street
 from Green Street.

 That Officer Hardy observed what he thought was a
 glow inside the vehicle.

 That Officer Hardy turned onto the--onto Green
 Street. At that point, the vehicle in question was in front
 of him. At that point, Officer Hardy observed what
 appeared to be a cell phone screen through the back
 window of the vehicle, whereupon the vehicle stopped at a
 stop sign. That at that point, what appeared to be a cell
 phone screen was clear in the air toward the center of the
 car.

 That it appeared to the officer that there was only
 one occupant of the vehicle.

 And the officer believed that the operator was using
 a cell phone while driving.

 The Court observed the dash cam vehicle. And the
 Court observed in the video what the officer described.

 The Court therefore finds that the officer had
 reasonable suspicion to stop the vehicle to investigate
 further.

These findings and conclusions were supported, in large part, by the testimony of

Officer Hardy. Based on his observations and experience, Officer Hardy testified that

he did not stop defendant for merely using a cell phone; the car was stopped for

actively using a mobile device while operating a motor vehicle in a manner that

 -9-
 STATE V. DALTON

 Opinion of the Court

Officer Hardy reasonably believed was proscribed by N.C. Gen. Stat. § 20-137.4A.

Officer Hardy observed defendant using and handling a cellular device while

traveling on multiple streets in a manner consistent with texting or reading text

messages—which is unlawful per N.C. Gen. Stat. § 20-137.4A(a)(1)-(2). Officer Hardy

opined that, based on his experience, had defendant been using a “mapping system”

on the device as he claimed, “it would be a look, and then [placing the phone] down

as opposed to holding it up the entire street just to get to a stop sign, and then to

make a left turn onto a street.”

 Defendant argues that as a foundation for reasonable suspicion, Officer Hardy

was required to clearly see text messaging on defendant’s cell phone or watch him

type out a text message. However, requiring a law enforcement officer to confirm the

specific use of the mobile device as a precondition to making an investigatory stop

would be essentially requiring proof beyond a reasonable doubt. While reasonable

suspicion is more than a mere hunch, it is surely a much less demanding standard

than proof beyond a reasonable doubt. See State v. Schiffer, 132 N.C. App. 22, 27,

510 S.E.2d 165, 168 (1999) (finding that officer had reasonable suspicion to stop

vehicle after noticing out-of-state tags and window tinting which the officer believed

was darker than permitted under North Carolina law); State v. Kincaid, 147 N.C.

App. 94, 98, 555 S.E.2d 294, 298 (2001) (holding that officer had reasonable suspicion

to stop vehicle for revoked license based on his personal knowledge of defendant);

 - 10 -
 STATE V. DALTON

 Opinion of the Court

State v. Young, 148 N.C. App. 462, 471, 559 S.E.2d 814, 821 (2002) (Greene, J.

concurring) (recognizing that a “traffic stop based on an officer’s mere suspicion that

a traffic violation is being committed, but which can only be verified by stopping the

vehicle, such as drunk driving or driving with a revoked license, is classified as an

investigatory stop, also known as a Terry stop.”) (citations omitted).

 In sum, just because a person may be using a wireless telephone while

operating a motor vehicle for a valid purpose does not, ipso facto, negate the

reasonable suspicion that the person is using the device for a prohibited use. When

reviewing N.C. Gen. Stat. § 20-137.4A(a) (“Unlawful use of mobile telephone for text

messaging or electronic mail”), it is as probable that a driver using a cell phone is

doing so to send or receive prohibited text messages as it is that the device is being

used for one of many lawful purposes, perhaps more so. Indeed, it would be unlikely

that someone, such as Officer Hardy, observing a person using a mobile device from

afar, such as defendant, would be able to definitively determine the specific use of the

device in hand. In any event, under the facts of this case, the trial court properly

found that Officer Hardy had reasonable, articulable suspicion that defendant had

violated the law such that the traffic stop was warranted.

 We, therefore, hold that the trial court did not err, much less commit plain

error, in denying defendant’s motion to suppress. More specifically, we hold that the

trial court’s findings of fact, under the totality of the circumstances, support the

 - 11 -
 STATE V. DALTON

 Opinion of the Court

conclusion that Officer Hardy had a reasonable, articulable suspicion to believe that

criminal activity was afoot (i.e., that defendant was using a cell phone in a manner

proscribed by law). Having determined that the motion to suppress was properly

denied, we do not address whether the alleged error had a probable impact on the

jury’s determination that defendant was guilty. We are cognizant that our holding

may appear to create a rather perverse result: that is, either every driver using a

cellular phone may be reasonably suspected of using the phone in an unlawful

manner or no driver may be reasonably suspected of using a cellular phone in an

unlawful manner. However, our holding is strictly limited to the facts of this case,

which, as explained supra, indicate that there was additional indicia of criminal

activity to justify the stop in addition to Officer Hardy’s plain observation of

defendant’s use of a mobile device. Such determinations are fact specific and rely

upon the evidence adduced at any trial on such a question. Our holding here should

not be viewed as establishing a test sufficient to meet the reasonable suspicion test

in other “texting-while-driving” cases.

 B. Sentencing

 On 15 November 2019, following trial, the sentencing phase proceeded in this

matter. Defendant stipulated to having six prior record level points and to being

sentenced at prior record level three for felony sentencing purposes. Pursuant to

these stipulations, the trial court sentenced defendant within the presumptive range

 - 12 -
 STATE V. DALTON

 Opinion of the Court

for the conviction of felonious fleeing to elude: ten to twenty-one months’

imprisonment.

 On appeal, defendant contends—and the State concedes—that defendant’s

prior record level worksheet should have reflected only five prior record level points,

which, in that case, would have triggered sentencing under level two of the guidelines.

The State, however, argues that because defendant was on probation for felonious

identity theft when he committed the crime of felonious fleeing to elude, for which he

was convicted in this underlying case, defendant obtained an additional sentencing

point for being on probation during the commission of a felony. In other words,

notwithstanding the fact that the stipulated prior record level worksheet included an

extra misdemeanor point, the State contends that an additional sixth point was

warranted because the underlying felony was committed while defendant was on

probation in another case.

 Pursuant to N.C. Gen. Stat. § 15A-1340.14(b)(7), one point is added to a

defendant’s aggregate prior record level “[i]f the offense was committed while the

offender was on supervised or unsupervised probation[.]” N.C. Gen. Stat. § 15A-

1340.14(b)(7) (2019). However, the “State must provide a defendant with written

notice of its intent to prove the existence of the prior record point . . . as required by

G.S. 15A-1340.16(a6).” N.C. Gen. Stat. § 15A-1340.14(b). Subsection 15A-

1340.16(a6), in turn, requires that such notice be provided “at least 30 days before

 - 13 -
 STATE V. DALTON

 Opinion of the Court

trial or the entry of a guilty or no contest plea.” N.C. Gen. Stat. § 15A-1340.16(a6)

(2019).

 In this case, the trial court never determined whether the statutory

requirements of N.C. Gen. Stat. § 15A-1340.16(a6) were met, and the State never

provided notice of its intent to prove a prior record level point under N.C. Gen. Stat.

§ 15A-1340.14(b). See N.C. Gen. Stat. § 15A-1022.1(a) (2019) (“The court

shall . . . determine whether the State has provided the notice to the defendant

required by G.S. 15A-1340.16(a6) or whether the defendant has waived his or her

right to such notice.”). Nor does the State posit that defendant waived his right to

receive such notice. See id.; see also N.C. Gen. Stat. § 15A-1340.16(a6) (“A defendant

may waive the right to receive such notice.”). Accordingly, the trial court erred by

including the extra (sixth) point in sentencing defendant as a level three.1 State v.

Snelling, 231 N.C. App. 676, 682, 752 S.E.2d 739, 744 (2014) (remanding for

resentencing under analogous circumstances). This error was prejudicial as it raised

defendant’s prior record level from a two to a three. See id. We therefore remand

this matter to the trial court for resentencing defendant at prior record level two

under the felony sentencing guidelines.

 III. Conclusion

1 We note that defendant “is not bound by a stipulation as to any conclusion of law that is required to
be made for the purpose of calculating” his prior record level. State v. Gardner, 225 N.C. App. 161,
167, 736 S.E.2d 826, 830 (2013) (citations omitted). The “trial court’s assignment of defendant’s prior
record level is a question of law.” Id. at 225 N.C. App. at 167, 736 S.E.2d at 830-31 (citations omitted).

 - 14 -
 STATE V. DALTON

 Opinion of the Court

 Because we have determined that the trial court did not commit plain error by

denying defendant’s motion to suppress, we affirm the trial court’s ruling on

suppression. However, the matter is remanded to the lower court for resentencing

for the reasons discussed herein.

 NO ERROR; REMANDED FOR RESENTENCING.

 Chief Judge MCGEE and Judge ZACHARY concur.

 - 15 -