STATE v. GARDNER

[225 N.C. App. 161 (2013)]

---

STATE OF NORTH CAROLINA
v.
JULIE PATRICE GARDNER

No. COA12-564

Filed 15 January 2013

**1. Appeal and Error—right of appeal lost—defendant not at fault—certiorari granted**

The Court of Appeals exercised its discretion and granted certiorari in a criminal case where defendant lost her right of

appeal through no fault of her own, but rather because of an error on the part of trial counsel.

**2. Appeal and Error—motion to dismiss appeal—issue not moot**

The State's motion to dismiss defendant's appeal was denied where defendant's argument presented a legal question concerning the calculation of her prior record level and her previous stipulation to her prior convictions did not moot that issue.

**3. Sentencing—prior record level—additional point—elements of offense**

The trial court erred by including an additional point to calculate defendant's prior record level where all of the elements of the consolidated assault with a deadly weapon on a government officer offense were not included in any of defendant's then-prior offenses.

On writ of *certiorari* to review judgment and order of commitment entered 13 October 2011 by Judge Christopher M. Collier in Iredell County Superior Court. Heard in the Court of Appeals 25 October 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Christine A. Goebel, for the State.*

*Kimberly P. Hoppin for Defendant.*

STEPHENS, Judge.

*Procedural History and Evidence*

This appeal arises from charges against Defendant Julie Patrice Gardner ("Gardner") for (i) Class 1 misdemeanor larceny; (ii) Class 2 misdemeanor resisting, delaying, or obstructing a law enforcement officer; (iii) Class H felony speeding to elude arrest; (iv) Class F assault with a deadly weapon on a government officer ("AWD-WOGO"); (v) Class 1 misdemeanor driving while license revoked; (vi) Class 1 misdemeanor aggressive driving; and (vii) attaining the status of habitual felon.

On the afternoon of 28 August 2010, Officer J.D. Bumgarner ("Officer Bumgarner") of the Statesville Police Department received a shoplifting-in-progress call, which described a white female and a black male leaving a Rugged Warehouse retail store in a green Ford

Escort. Soon after, a green Escort passed Officer Bumgarner, who was on his way to another call. The driver, a white female, watched him as she passed. Officer Bumgarner then activated his lights and pursued her. In an attempt to escape, the Escort crossed into oncoming traffic and ran at least one red light. Officer Bumgarner caught up, and the Escort began to pass cars while in a no-passing zone. After a short time the Escort crossed left of the center line, turned onto a side street, and came to a stop. Officer Bumgarner followed and exited his car with gun drawn, instructing everyone to come out and lie down. The rear passenger exited, threw the keys down, and laid himself on the ground. The front passenger came out, but turned to reach for something in the car. Gardner came out, grabbed the keys, and returned to the Escort. The two passengers began to run away, and Officer Bumgarner struggled with Gardner to keep the keys out of the ignition. Officer Bumgarner's arm got stuck in the car, and Gardner began to drive away. The car pulled forward as Gardner accelerated, and Officer Bumgarner's arm was released without serious injury.

At that point, Officer Bumgarner began to pursue one of the other passengers on foot. He caught up with that individual and was able to identify Gardner with that person's help. Officer Bumgarner then made his way to the magistrate's office to take out warrants for Gardner's arrest. Before he was able to do so, another officer entered with Gardner in tow.

Gardner was tried in Iredell County Superior Court during the 12 October 2011 session. Pursuant to a plea agreement with the State, Gardner pled guilty to all of the offenses, as charged, in exchange for their consolidation for sentencing purposes. At sentencing, Gardner signed a prior record level worksheet indicating that she had a prior record level IV, with ten points, the minimum number required for a level IV.

Gardner's prior record level was calculated using three measures. The State presented a prior record level worksheet indicating that Gardner had two prior Class I felony convictions and four prior Class 1 misdemeanors, totaling eight points. Gardner also received one point for having committed the offenses while still on probation. Gardner received another point because the State's worksheet showed that she had a previous conviction for felony fleeing to elude arrest, one of the offenses she had also committed on 28 August 2010.

On 13 October 2011, the trial court consolidated all of the charges against Gardner under the Class F AWDWOGO offense and sentenced Gardner within the aggravated range as a Class C felon. As a consequence, the court sentenced Gardner to a minimum term of 120 months and a maximum term of 153 months in prison.

Gardner did not give notice of appeal at trial. On 17 October 2011, counsel for Gardner went to the Iredell County Clerk of Court and signed a form, which she incorrectly believed was "sufficient notice of appeal to preserve [Gardner's] right to appeal the judgments." She was appointed an appellate defender and filed a petition for writ of *certiorari* on 18 June 2012. Gardner asks this Court to review the 13 October 2011 judgment and the concomitant calculation of Gardner's prior record level, despite her deficient notice of appeal. On 12 July 2012, the State filed a motion to dismiss.

*Discussion*

*I.  Gardner's Petition for Writ of Certiorari*

**[1]** In criminal cases, a party entitled to appeal a judgment must take appeal by either: (1) giving oral notice at trial; or (2) filing written notice with the clerk of superior court and, within fourteen days, serving copies of that notice on all adverse parties. N.C.R. App. P. 4(a). Written notice of appeal must specify the party or parties taking the appeal, designate the judgment or orders from which appeal is taken and the court to which appeal is taken, and be signed by counsel of record or a *pro se* defendant. N.C.R. App. P. 4(b).

Gardner filed an improper notice of appeal. Instead of complying with Rule 4, counsel for Gardner filled out a form used for appealing decisions from district court to superior court. As such, the notice failed to correctly designate the court to which appeal was taken. In addition, Gardner failed to serve notice of her appeal on the State. Accordingly, Gardner lost her right to appeal the trial court's judgment.

Given her failure to comply with Rule 4, Gardner requests that this Court grant her petition for *certiorari* and review the trial court's judgment and order of commitment. When a party has lost the right to appeal because of "failure to take timely action," the writ of *certiorari* may be issued in appropriate circumstances by either appellate court. N.C.R. App. P. 21(a). The power to grant a writ of *certiorari* "is discretionary and may only be done in appropriate circumstances." *State v. Hammonds*, ___ N.C. App. ___, ___, 720 S.E.2d 820, 823 (2012) (internal citations and quotation marks omitted).

In this case, Gardner's trial counsel attested that she received the form from the Iredell County Clerk of Court and believed it was "sufficient notice of appeal to preserve [Gardner's] right to appeal the judgments." Although counsel for Gardner failed to serve notice of appeal on the State and failed to designate the court to which appeal was taken, this Court has generally granted *certiorari* under N.C.R. App. P. 21(a)(1) when a defendant has pled guilty, but lost the right to appeal the calculation of her prior record level through failure to give proper oral or written notice. *See, e.g., State v. Mungo,* ___ N.C. App. ___, ___, 713 S.E.2d 542, 545 (2011). We have also held that where a defendant has lost his right of appeal through no fault of his own, but rather as a result of the actions of counsel, failure to issue a writ of *certiorari* would be manifestly unjust. *Hammonds,* ___ N.C. App. at ___, 720 S.E.2d at 823.

We are persuaded that Gardner lost her right of appeal through no fault of her own, but rather because of an error on the part of trial counsel. Thus, we exercise our discretion and grant *certiorari.*

## II. The State's Motion to Dismiss and Gardner's Prior Record Level

**[2]** The State contends that Gardner is without the right to appeal the calculation of her prior record level because she stipulated to it. Since Gardner only raises this one issue on appeal, the State urges us to dismiss the entire case as moot.

Section 15A-1444(a2) of the North Carolina General Statutes provides that a defendant who has entered a guilty plea is entitled to appeal as a matter of right when there is a question as to whether the defendant's sentence resulted from an incorrect finding of her prior record level. N.C. Gen. Stat. § 15A-1444(a2)(1) (2011). The State argues that subsection (a2) is not applicable here because Gardner stipulated to her prior record level, effectively mooting the question of its validity. In support of that assertion, the State cites an opinion of this Court from 1998, *State v. Hamby,* 129 N.C. App. 366, 499 S.E.2d 195 (1998).

In *Hamby,* the defendant pled guilty to assault with a deadly weapon inflicting serious injury. *Id.* at 367, 499 S.E.2d at 195. The defendant entered into a plea agreement, which stipulated that (1) she had a prior record level II, (2) the punishment for the offense could be either intermediate or active in the trial court's discretion, and (3) the trial court was authorized to sentence the defendant to between 29 and 44 months in prison. *Id.* at 367, 369, 499 S.E.2d at 195,

197. Relying on the terms of the agreement, the trial court sentenced the defendant to between 29 and 44 months in prison. *Id.* at 367, 499 S.E.2d at 195.

Interpreting subsection (a2), the *Hamby* Court pointed out that "[a] plain reading of [(a2)] indicates that the issues set out may be raised on appeal by *any* defendant who has pled guilty to a felony or misdemeanor in superior court. However, we believe the right to appeal granted by this subsection is not without limitations." *Id.* at 369, 499 S.E.2d at 196. This Court determined in *Hamby* that the appeal of any defendant who "essentially stipulate[s] to matters that moot the issues he could have raised under subsection (a2)" should be dismissed. *Id.* Under that rule, we held that (1) the defendant had "mooted the issues of whether her prior record level was correctly determined" by admitting that her prior record level was II, (2) the offense could be either intermediate or active in the trial court's discretion, and (3) the court was authorized to sentence her to a maximum of 44 months in prison. *Id.* at 369-70, 499 S.E.2d at 197. Thus, we dismissed the defendant's appeal. *Id.* at 370, 499 S.E.2d at 197.

The State misinterprets our decision in *Hamby* to bar Gardner from appealing the trial court's calculation of her prior record level. The trial court in *Hamby* simply instituted the provisions of the defendant's plea agreement, sentencing her to between 29 and 44 months in jail pursuant to that agreement. Because Hamby had agreed that the trial court could sentence her in accordance with her agreement with the State, she mooted any issues that could have been raised on appeal as to her sentence.

In this case, however, Gardner signed a sentencing worksheet, which purported to calculate her prior record level to be a IV. Gardner's signature can be found in section III of the form, designated "Stipulation," which clarifies that she stipulates to her prior convictions and the felony prior record scoring process, while "agree[ing] with the [listed] prior record level . . . based on the information herein." Unlike *Hamby*, the trial court in this case used the information to which Gardner stipulated to calculate her prior record level; it did not merely implement the parties' previously agreed-upon sentencing provisions.

A defendant's prior record level is "determined by calculating the sum of the points assigned to each of the offender's prior convictions that the court . . . finds to have been proved . . . ." N.C. Gen. Stat. § 15A-1340.14(a) (2011). A defendant's prior convictions can be

proved, *inter alia,* by stipulation of the parties. N.C. Gen. Stat. § 15A-1340.14(f)(1). While such convictions often effectively constitute a prior record level, a defendant is not bound by a stipulation as to any conclusion of law that is required to be made for the purpose of calculating that level. *State v. Fraley,* 182 N.C. App. 683, 691, 643 S.E.2d 39, 44 (2007) ("Although defendant's stipulation as to prior record level is sufficient evidence for sentencing at that level . . . , the trial court's assignment of level IV to defendant was an improper conclusion of law, which we review *de novo.*"); *see also State v. Prush,* 185 N.C. App. 472, 480, 648 S.E.2d 556, 561 (2007) ("[T]he comparison of the elements of two North Carolina criminal offenses does not require the resolution of disputed facts, but is a matter of law.").

"While a stipulation by a defendant is sufficient to prove the existence of the defendant's prior convictions, which may be used to determine the defendant's prior record level for sentencing purposes, the trial court's assignment of defendant's prior record level is a question of law." *State v. Wingate,* ___ N.C. App. ___, ___, 713 S.E.2d 188, 189 (2011) (citing *Fraley,* 182 N.C. App. at 691, 643 S.E.2d at 44); *see also State v. Fair,* 205 N.C. App. 315, 318, 695 S.E.2d 514, 516 (2010) ("Defendant is bound on appeal by any stipulation as to the existence of a conviction. However, even though defendant stipulated to his prior record level on three separate occasions, our cases have held that whether defendant's convictions can be counted towards sentencing points for determination of his structured sentencing level is a conclusion of law, fully reviewable by this Court on appeal."). "Stipulations as to questions of law are generally held invalid and ineffective, and not binding upon the courts, either trial or appellate." *Wingate,* ___ N.C. App. at ___, 713 S.E.2d at 189 (internal quotation marks and citations omitted).

Here, Gardner argues that the trial court erred by assigning an additional, tenth point, which was sufficient to increase her prior record level from III to IV. That point was added pursuant to N.C Gen. Stat. § 15A-1340.14(b)(6), which provides that one point is added "[i]f all the elements of the present offense are included in any prior offense for which the offender was convicted . . . ." N.C. Gen. Stat. § 15A-1340.14(b)(6) (2011). Among Gardner's prior offenses was a previous conviction for felony fleeing to elude arrest, which she was again convicted of in this case.

On appeal, Gardner contends the tenth point was improperly added, however, because the offenses that she committed on 28

August 2010 were consolidated under the "most serious offense" of AWDWOGO, which she had not previously committed. Because the charges were not consolidated under felony fleeing to elude arrest, Gardner asserts that the tenth point should not have been allocated. Gardner's contention presents a legal question having to do with the calculation of her prior record level and, therefore, her previous stipulation does not moot that issue. Accordingly, we deny the State's motion to dismiss and proceed to the merits of Gardner's appeal.

**[3]** In support of her argument, Gardner asks us to follow *State v. Prush*, where we overturned the trial court's calculation of the defend-ant's prior record level because none of the defendant's prior convictions included all of the elements of the most serious offense in his consolidated judgment. *Prush*, 185 N.C. App. at 479–80, 648 S.E.2d at 560–61. As is the case here, the defendant in *Prush* had also stipulated to his prior record level. *Id.* Gardner argues that because AWDWOGO is a more serious offense than felony fleeing to elude arrest, we must similarly remand this case for resentencing. We agree.

Section 1340.15(b) states that the trial court may consolidate multiple offenses for judgment and impose a single judgment under the "most serious offense" when an offender is convicted of more than.one offense at the same time. N.C. Gen. Stat. § 15A-1340.15(b); *cf. State v. Mack*, 188 N.C. App. 365, 381, 656 S.E.2d 1, 13 (2008) ("As selling cocaine was the more serious of the two offenses contained in defendant's sentence for selling cocaine and resisting a public officer (a Class G Felony versus a Class 2 Misdemeanor), the sentence should have been issued in accordance with the prior record level that would accompany the conviction for selling cocaine.").

The State asserts that "the most serious offense in [Gardner's] consolidated judgment is a Class C felony," not the AWDWOGO charge, pointing out that both the AWDWOGO and felony fleeing to elude arrest charges were raised to Class C felonies for punishment purposes. For support, the State cites a 2011 opinion of this Court, *State v. Skipper*, ___ N.C. App. ___, 715 S.E.2d 271 (2011) and contends that the trial court was permitted to consolidate Gardner's charges under either felony fleeing to elude arrest or AWDWOGO.

In *Skipper*, this Court determined that the defendant's sentence should not have been reduced, even though one of his four convictions had been vacated, because the "most serious" of the remaining offenses was still a Class C felony. *Id.* at ___, 715 S.E.2d at 273. The Court reasoned that "[a]ll three underlying felonies were categorized

as Class C felonies because of defendant's habitual felon status. . . .
[and, thus,] the most serious offense in the consolidated judgment
was a Class C felony." *Id.* at ___, 715 S.E.2d at 273. As a result, the
panel determined that the trial court "had no choice but to enter a
sentence for a single Class C felony . . . ." Because the trial court
in this case consolidated all of Gardner's charges based on her
status as a habitual felon, the State contends that *Skipper* controls.
We disagree.

Thirteen years prior to *Skipper*, we determined that, when calcu-
lating a defendant's prior record level, the term "prior felony convic-
tion" refers only to "a prior adjudication of the defendant's guilt or to
a prior entry of a plea of guilty or no contest by the defendant. The
term . . . does *not* refer to the sentence imposed for committing a
prior felony." *State v. Vaughn*, 130 N.C. App. 456, 460, 503 S.E.2d 110,
113 (1998), *aff'd per curiam*, 350 N.C. 88, 511 S.E.2d 638 (1999).
Accordingly, the fact that a defendant has been "*sentenced as* a Class
C felon," for example, does not mean that the actual, underlying
offense is transformed into a Class C felony. *See id.; see also State
v. Flint*, 199 N.C. App. 709, 729, 682 S.E.2d 443, 454 (2009) ("Only the
points from the underlying felony can be counted in the prior record
level, not points for the punishment enhancement. This is because
being an habitual felon is not a felony in and of itself. It is rather, a
status the attaining of which subjects a person thereafter convicted
of a crime to an increased punishment for that crime.") (internal quo-
tation marks and citations omitted).

"Where a panel of the Court of Appeals has decided the same
issue, albeit in a different case, a subsequent panel of the same court
is bound by that precedent, unless it has been overturned by a higher
court." *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989).
Further, our Supreme Court has clarified that, where there is a con-
flicting line of cases, a panel of this Court should follow the older of
those two lines. *In re R.T.W.*, 359 N.C. 539, 542 n.3, 614 S.E.2d 489,
491 n.3 (2005), *superseded by statute on other grounds*, Act of Aug.
23, 2005, ch. 398, sec. 12, 2005 N.C. Sess. Laws 1455, 1460-61 (amend-
ing various provisions of the Juvenile Code), *as recognized in In re
M.I.W.*, ___ N.C. ___, ___, 722 S.E.2d 469, 472 (2012). With that in
mind, we find *Skipper* and *Vaughn* are irreconcilable on this point of
law and, as such, constitute a conflicting line of cases. Because
*Vaughn* is the older of those two cases, we employ its reasoning here.

N.C. Gen. Stat. § 15A-1340.15(b) provides that, after consolidating
a sentence, the trial court's judgment shall contain "a sentence dispo-

sition specified for the class of offense and prior record level of the most serious offense . . . ." In this case, the trial court consolidated all of Gardner's 28 August 2010 offenses under AWDWOGO.[1] Though both the AWDWOGO and felony fleeing to elude arrest convictions were raised to Class C felonies for punishment purposes, AWDWOGO is still the more serious of the two underlying felonies.[2] N.C. Gen. Stat. § 15A-1340.14(b)(6) requires that all the elements of the present offense be included in any prior offense at conviction in order to allocate an additional point. Here, all of the elements of the consolidated AWDWOGO offense were not included in any of Gardner's then-prior offenses. Therefore, we find that the trial court erred by including an additional, tenth point and reverse its judgment and order of commitment. We remand for resentencing consistent with this opinion.

REVERSED and REMANDED FOR RESENTENCING.

Judges GEER and MCCULLOUGH concur.

---

1. On the judgment and commitment sheet, the trial court listed four offenses to which defendant pled guilty: (1) AWDWOGO, (2) habitual felon, (3) driving while license revoked, and (4) aggressive driving.

2. AWDWOGO is a Class F felony. N.C. Gen. Stat. § 14-34.2 (2011). Felony fleeing to elude arrest, coupled with the two aggravating factors in this circumstance, is a less serious, Class H felony. See N.C. Gen. Stat. § 20-141.5(b).